UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

Saint Paul Area Chamber of Commerce, a Minnesota
nonprofit corporation, Burnsville Chamber of
Commerce, a Minnesota nonprofit corporation, and
Greater Mankato Chamber of Commerce, a
Minnesota nonprofit corporation,

Appeal No. 05-1795

Appellants,

vs.

Susan Gaertner, in her official capacity as County
Attorney for Ramsey County, Minnesota,
James Backstrom, in his official capacity as County
Attorney for Dakota County, and
Ross Arneson, in his official capacity as County
Attorney for Blue Earth County,

Appellees.

---

ON APPEAL FROM
UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
NO. CIV 04-3767
HONORABLE MICHAEL J. DAVIS

---

**APPELLANTS' BRIEF AND ADDENDUM**

---

*(Counsel continued on next page)*

WINTHROP & WEINSTINE, P.A.
Thomas H. Boyd
David M. Aafedt
Suite 3500, 225 South Sixth Street
Minneapolis, Minnesota 55402
Telephone:(612) 604-6400
Facsimile: (612) 604-6800
tboyd@winthrop.com
daafedt@winthrop.com

**Attorneys for Appellants Saint Paul
Area Chamber of Commerce,
Burnsville Chamber of Commerce,
and Greater Mankato Chamber of
Commerce**

RAMSEY COUNTY ATTORNEY
Darwin J. Lookingbill
Suite 560, 50 W. Kellogg Blvd.
St. Paul, MN 55102
Phone: (651) 266-2755
Fax: (651) 266-3032
darwin.lookingbill@co.ramsey.mn.us

**Attorneys for Appellee Susan
Gaertner**

DAKOTA COUNTY ATTORNEY
Andrea G. White
Dakota County Attorney's Office
Dakota County Judicial Center
1560 Highway 55
Hastings, Minnesota 55033
Telephone: (651) 438-4438
Facsimile: (651) 438-4479
andrea.white@co.dakota.mn.us

**Attorneys for Appellees James
Backstrom and Ross Arneson**

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES .................................................................. ii

SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT ................... v

CORPORATE DISCLOSURE STATEMENT ...................................... vi

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................... 2

STATEMENT OF THE CASE .............................................................. 3

STATEMENT OF FACTS ................................................................. 5

SUMMARY OF THE ARGUMENT ................................................... 11

ARGUMENT ................................................................................ 13

    I.      STANDARD OF REVIEW ............................................. 13

    II.     THE DISTRICT COURT ERRED AS A MATTER OF LAW
            IN HOLDING THAT APPELLANTS LACKED STANDING
            AND THE CASE WAS NOT JUSTICIABLE ................................ 14

          A.     Appellants Have Standing To Assert Their Claims And
                Seek Declaratory And Injunctive Relief ................................ 16

          B.     Appellants' Claims Are Clearly Ripe For Adjudication .......... 25

          C.     The Case Law Relied Upon By The District Court Is
                Clearly Distinguishable From The Case At Bar ...................... 26

CONCLUSION ............................................................................. 28

CERTIFICATE OF COMPLIANCE

ADDENDUM INDEX

# TABLE OF AUTHORITIES

Page No.

## Cases

*Ariz. Right To Life Political Action Comm. v. Bayless,*
   320 F.3d 1002 (9th Cir. 2003).................................................2, 21, 23

*Ark. Right To Life State PAC v. Butler,*
   972 F. Supp. 1187 (W.D. Ark. 1997) ........................................17

*Babbitt v. United Farm Workers Nat'l Union,*
   442 U.S. 289 (1979)...................................................................15

*Bland v. Fessler,*
   88 F.3d 729 (9th Cir. 1996)........................................................22

*Blatnik Co. v. Ketola,*
   587 F.2d 379 (8th Cir. 1978)......................................................14

*Conley v. Gibson,*
   355 U.S. 41 (1957).....................................................................13

*Flast v. Cohen,*
   392 U.S. 83 (1968).....................................................................14

*Hilton  v. Pine Bluff Pub. Sch.,*
   796 F.2d 230 (8th Cir. 1986) .....................................................13

*Jackson Sawmill Co. v. United States,*
   580 F.2d 302 (8th Cir. 1978)......................................................14

*Lujan v. Defenders of the Wildlife,*
   504 U.S. 555 (1992)...................................................................16

*Majors v. Abell,*
   317 F.3d 719 (7th Cir. 2003).........................................2, 19, 20

*Minn. Citizens Concerned For Life v. Fed. Election Comm'n,*
   113 F.3d 129 (8th Cir. 1997)...............................................*passim*

*Mobil Oil Corp. v. Att'y Gen. of the Commonwealth of Va.,*
   940 F.2d 73 (4th Cir. 1991)........................................................23

*Morton v. Becker*,
  793 F.2d 185 (8th Cir. 1986) ..................................................... 13

*Nat'l Right To Life P.A.C. v. Connor*,
  323 F.3d 684 (8th Cir. 2003) ..................................................... 26

*N.H. Right To Life Political Action Comm. v. Gardner*,
  99 F.3d 8 (1st Cir. 1996) ..................................................... 17, 18

*Phillips v. Pa. Higher Educ. Assistance Agency*,
  657 F.2d 554 (3d Cir. 1981) ..................................................... 24

*Poe v. Ullman*,
  367 U.S. 497 (1961) ..................................................... 26

*Renne v. Geary*,
  501 U.S. 312 (1991) ..................................................... 27

*Right To Life of Duchess County, Inc. v. Fed. Election Comm'n*,
  6 F. Supp. 2d 248 (S.D.N.Y. 1998) ..................................................... 17

*Schuer v. Rhodes*,
  416 U.S. 232 (1974) ..................................................... 13

*Steffel v. Thompson*,
  415 U.S. 452 (1974) ..................................................... 14

*Thomas W. Garland, Inc. v. City of St. Louis*,
  596 F.2d 784 (8th Cir. 1979) ..................................................... 13

*United Food & Commercial Workers Int'l Union v. IBP, Inc.*,
  857 F.2d 422 (8th Cir. 1988) ..................................................... 14, 24

*Vt. Right To Life Comm. v. Sorrell*,
  221 F.3d 376 (1st Cir. 1999) ..................................................... 19

*Warth v. Seldin*,
  422 U.S. 490 (1975) ..................................................... 14

*Westcott v. Omaha*,
  901 F.2d 1486 (8th Cir. 1990) ..................................................... 13

**Statutory and Regulatory Authorities**

U.S. Const. art. III, § 2 ........................................................................ 14

2 U.S.C. § 453 ...................................................................................... 6

28 U.S.C. § 2201 .................................................................................. 14

11 C.F.R. § 108.7(b)(3) ......................................................................... 6

11 C.F.R. § 114.3 ............................................................................. 6, 21

11 C.F.R. § 114.7 ............................................................................. 6, 21

Minn. Stat. § 211B.01 ............................................................................ 7

Minn. Stat. § 211B.15 ..................................................................... *passim*

Minn. Stat. § 211B.16 ................................................................ 8, 16, 20

Minn. Stat. § 388.01 ............................................................................ 16

Minn. Stat. § 609.02 ....................................................................... 8, 22

Minn. Stat. § 609.0341 .................................................................... 8, 22

Minn. Stat. § 609.713 ...................................................................... 8, 22

# SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT

Appellants Saint Paul Area Chamber of Commerce, Burnsville Chamber of Commerce, and Greater Mankato Area Chamber of Commerce (collectively, "Appellants") appeal the dismissal of their Complaint for declaratory and injunctive relief based upon the District Court's erroneous holding that Appellants lack standing to challenge the constitutionality of Minnesota Statutes section 211B.15, subdivision 2.

The Federal Election Campaign Act expressly allows membership organizations like Appellants to engage in electioneering activities in support of candidates for federal office. The Minnesota statute Appellants seek to challenge unconstitutionally prohibits all corporate political contributions, direct or indirect, to candidates for federal office, including those by nonprofit membership organizations like Appellants, and imposes possible imprisonment, substantial fines, and potential dissolution of the corporation's charter. Well-established precedent provides that Appellants need not risk prosecution and imprisonment in order to have standing to challenge this clearly preempted Minnesota law where, as in the instant case, their First Amendment rights are abridged.

Given the significance of the First Amendment rights at stake in this and similar cases, Appellants respectfully request oral argument of 15 minutes per side.

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1A of the Eighth Circuit Rules of Appellate Procedure, Appellants Saint Paul Area Chamber of Commerce, Burnsville Chamber of Commerce, and Greater Mankato Chamber of Commerce state that they are each nonprofit membership organizations incorporated and operating under the laws of the State of Minnesota and are exempt from taxation pursuant to Section 501(c)(6) of the Internal Revenue Code, and further state that they do not have any parent corporations and that no publicly held corporation owns 10% or more of any of the Appellants.

# JURISDICTIONAL STATEMENT

On August 11, 2004, Appellants Saint Paul Area Chamber of Commerce, Burnsville Chamber of Commerce, and Greater Mankato Chamber of Commerce (collectively, "Appellants") filed their action for declaratory and injunctive relief. The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims set forth in the Complaint arose under the United States Constitution, the Federal Election Campaign Act, the regulations promulgated thereunder, and the laws of the United States.

On February 28, 2005, the District Court entered final judgment dismissing all of Appellants' claims. On March 17, 2005, Appellants timely filed a Notice of Appeal. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether the District Court erred as a matter of law by holding that this case is not justiciable and Appellants do not have standing to bring a pre-enforcement challenge to Minnesota Statutes section 211B.15, subdivision 2—which directly conflicts with and is expressly preempted by the Fair Election Campaign Act and its companion regulations, clearly infringes on federally established First Amendment rights to engage in electioneering activity, and carries a punishment of five years in prison and $40,000 in fines—because Appellees have not made an actual threat of prosecution under said Minnesota statute?

*Apposite Authority:*

> *Minn. Citizens Concerned For Life et al. v. Fed. Election Comm'n,* 113 F.3d 129 (8th Cir. 1997), *reh'g and suggestion for reh'g en banc denied* (July 9, 1997).

> *Majors v. Abell,* 317 F.3d 719 (7th Cir. 2003).

> *Ariz. Right To Life Political Action Comm. v. Bayless et al.,* 320 F.3d 1002 (9th Cir. 2003).

## **STATEMENT OF THE CASE**

The Federal Election Campaign Act and the regulations promulgated thereunder (collectively, "FECA") expressly allow nonprofit membership organizations like Appellants to engage in election advocacy and communications with their members with regard to candidates for the United States Senate and the United States House of Representatives. Although these electioneering activities are expressly allowed by federal law, the right to engage in these very same activities are expressly prohibited by and subject to harsh criminal penalties under Minnesota Statutes section 211B.15, subdivisions 2, 6 and 7. Specifically, a violation of the challenged Minnesota statute carries with it imprisonment of up to five years, fines of up to $40,000, and possible dissolution of the violator's corporate charter.

On August 11, 2004, Appellants filed this action against Appellees Ramsey County Attorney Susan Gaertner, Dakota County Attorney James Backstrom, and Blue Earth County Attorney Ross Arneson (collectively, "Appellees"). Appellees are Minnesota County Attorneys responsible for prosecuting violations of the challenged statute. Appellants seek a declaration that FECA expressly preempts Minnesota law as to activities relating to elections for federal office, and also seek permanent injunctive relief prohibiting Appellees from enforcing the unconstitutional provisions.

On September 1, 2004, Appellees moved to dismiss the Complaint on the grounds that, *inter alia,* it failed to state a claim upon which relief could be granted based on Appellees' contentions that Appellants lacked standing to challenge the constitutionality of the Minnesota law at issue and that a justiciable controversy did not exist. Appellants resisted Appellees' motion to dismiss on the grounds that parties are not required to risk imprisonment or other criminal sanctions in order to have standing to challenge the clearly unconstitutional statute, particularly where those parties' First Amendment rights are implicated.

On December 6, 2004, Chief United States Magistrate Judge Jonathan G. Lebedoff of the United States District Court for the District of Minnesota reported and recommended the granting of Appellees' motion to dismiss on the grounds that the case was not justiciable as Appellants lacked standing to challenge the statute at issue. Appellants filed timely objections to Chief Magistrate Judge Lebedoff's Report and Recommendation with United States District Court Judge Michael J. Davis of the District of Minnesota.

On February 23, 2005, Judge Davis adopted Chief Magistrate Lebedoff's Report and Recommendation to dismiss Appellants' claims in their entirety. Thereafter, the District Court entered final judgment on February 28, 2005. Appellants filed their Notice of Appeal on March 17, 2005.

## STATEMENT OF FACTS

Appellants Saint Paul Area Chamber of Commerce, Burnsville Area Chamber of Commerce, and Greater Mankato Chamber of Commerce are nonprofit, membership organizations incorporated under the laws of the State of Minnesota. (Appendix ("A.") 9, 25, 35, 46) Appellants are also tax-exempt pursuant to Section 501(c)(6) of the Internal Revenue Code. (*Id.*) Membership in these organizations is open to persons, associations, corporations, partnerships, foundations, trusts, or estates who subscribe to Appellants' mission statements and objectives, pay annual dues, and are accepted as members. (A.11, 25, 35, 46). As part of their mission, Appellants seek to influence public policy on behalf of small businesses, provide small businesses with resources, promote and develop opportunities for small business and community growth, and shape the future workforce. (A.25, 46)

Consistent with their mission, Appellants seek to use their general treasury funds, to the fullest extent permitted by law, to support candidates for the United States Senate ("Senate") and the United States House of Representatives ("House of Representatives"). (A.7-8, 11-12) The Federal Election Campaign Act and the regulations promulgated thereunder expressly allow membership organizations like Appellants to use their general treasury funds to engage in advocacy and communication with their members relating to federal election activities.

(Addendum ("Add.") 19-23)  Further, FECA expressly "supersede[s] and preempt[s] any provision of state law with respect to election to federal office." (Add.24) (citing 2 U.S.C. § 453)  The applicable regulations likewise provide that "federal law supersedes state law concerning the limitations on contributions and expenditures regarding federal candidates and political committees."  (Add.25) (citing 11 C.F.R. § 108.7(b)(3))

In accordance with federal law, Appellants intend to engage in the following activities, each of which is expressly allowed under FECA:

- endorsing candidates for the Senate and House of Representatives and encouraging member support of those candidates;

- inviting candidates for Senate and House of Representatives to attend and speak at member events;

- sending letters to Appellants' respective members informing them of their endorsement and encouraging members to support the endorsed Senate or House of Representative candidates;

- establishing a phone bank to urge members to vote in support of endorsed Senate or House of Representative candidates;

- inviting Appellants' respective members to attend events being held on behalf of endorsed candidates; and

- sending email or other correspondence to Appellants' respective members informing them of federal candidate events and public appearance schedules.

(Add.19-23) (citing 11 C.F.R. §§ 114.3 and 114.7)

Minnesota law, however, expressly prohibits any direct or indirect political expenditures on behalf of candidates for federal office, including the foregoing

election activities expressly allowed under FECA. (Add.16-18) Specifically, Minnesota Statutes section 211B.15, subdivision 2 provides, in pertinent part, that:

> A *corporation may not make any contribution or offer to agree to make a contribution directly or indirectly* of any money, property, free service of its officers, employees, members, or thing of monetary value to a major political party, organization, committee, or individual *to promote or defeat the candidacy of an individual for nomination, election or appointment to a political office.*

(Add.16-18) (emphasis added)

The Minnesota statute in question defines a candidate as "[a]n individual who seeks nomination or election to a *federal*, statewide, legislative, judicial, or local *office . . .* except candidates for President and Vice-President of the United States." (Add.15) (citing Minn. Stat. § 211B.01, subd. 3 (2002) (emphasis added)) Corporations are defined to include "nonprofit corporation[s] that carr[y] out activities in this state." (Add.16-18) (citing Minn. Stat. § 211B.15, subd. 1(2) (2002)).

Violations of Minnesota Statutes section 211B.15 are subject to severe criminal consequences. (Add.16-18) For example, corporations such as Appellants may be fined up to $40,000 and have their corporate charters dissolved. (Add.16-18) (citing Minn. Stat. § 211B.15, subd. 7 (2002)). Individuals, employees, officers and directors acting on behalf of corporations, such as Appellants, may be fined up to $20,000 and imprisoned for up to five years.

(Add.16-18) (citing Minn. Stat. § 211B.15, subd. 6). These criminal sanctions are on par with serious, felony level offenses in the State of Minnesota. *See, e.g.,* Minn. Stat. §§ 609.02, subds. 2-5 (felonies, misdemeanors, gross misdemeanors, and petty misdemeanors defined), 609.0341, subd. 2 (increased maximum fines for felony offenses), and 609.713, subd. 1 (2002) (crime of terroristic threats defined).

Appellees Susan Gaertner, County Attorney for Ramsey County, Minnesota; James Backstrom, County Attorney for Dakota County, Minnesota; and Ross Arneson, County Attorney for Blue Earth County, Minnesota, are charged with the responsibility for prosecuting violations of the challenged Minnesota statutory provisions. (A.10) (citing Minn. Stat. § 211B.16)

Although Appellants desire and intend to engage in those communications and activities that are expressly allowed under FECA to support persons seeking nomination and election to the United States House of Representatives and United States Senate, they are understandably reluctant to engage in the activities criminalized by Minnesota Statutes section 211B.15, subdivision 2 for fear that they and their directors, officers, and employees will be prosecuted and that their corporate charters would be dissolved. (A.10, 13) Specifically, they are unwilling to engage in the activities expressly provided for under FECA with the latent and ever-present risk of criminal sanctions hanging over their heads. (*Id.*) Given these express prohibitions and accompanying penal sanctions under Minnesota law,

Appellants and their directors, officers, and employees have refrained from engaging in these communications and activities that could give rise to such a threat of prosecution, imprisonment, fines and the dissolution of their corporate charters. (*Id.*)

Accordingly, Appellants brought this action seeking a declaration that FECA and its companion regulations preempt Minnesota law as to the election activities in which Appellants seek to engage as to federal congressional candidates. (A.14, 16) Appellants are also seeking permanent injunctive relief prohibiting Appellees from prosecuting Appellants from enforcing these provisions of Minnesota law insofar as they relate to federal election activities. (A.15-16)

Before the District Court, Appellees moved to dismiss Appellants' claims in their entirety, arguing that Appellants do not have standing because they have not suffered any injury and that the case is, therefore, not ripe for adjudication. (Add.1-2, 7-8) Notably, in moving to dismiss, Appellees did not contest in any way Appellants' claim that FECA preempted the challenged Minnesota statute.

In ruling on Appellees' motion to dismiss, the District Court concluded that Appellants do not have standing to bring the instant case because, in its view, there is no case or controversy between the parties. (Add.11) In reaching its decision, the District Court erroneously relied on distinguishable and inapplicable legal authority for the inaccurate proposition that Appellants must allege that Appellees

have threatened them with actual prosecution or that prosecution is likely in order to have standing to challenge the Minnesota statute at issue in this case. (Add.10-11) The District Court refrained altogether from conducting a review of the merits of the clearly preempted Minnesota law. (*Id.*)

# SUMMARY OF THE ARGUMENT

Appellants commenced this action for declaratory and injunctive relief because Minnesota Statutes section 211B.15 directly conflicts with, and is expressly preempted by, the Federal Election Campaign Act and the regulations promulgated thereunder. Appellants seek to challenge the constitutionality of Minnesota Statutes section 211B.15 prior to engaging in the electioneering activities that are expressly permitted under FECA due to the prohibitions and severe criminal sanctions that are imposed upon these same activities by the Minnesota election law statute. Appellants' officers, directors, and employees do not wish, and should not have, to risk being jailed for up to five years and fined significant sums of money in order to have standing to challenge the clearly preempted Minnesota law, especially where, as in this case, their First Amendment rights are clearly implicated.

It is well-established that where a party commences a pre-enforcement challenge to an election law statute—particularly where the exercise of its First Amendment rights will be subject to possible criminal sanctions—that party need not show that it has been threatened with actual prosecution in order to have standing. The threat of prosecution exists as part of the statute and the abridgement of a party's First Amendment rights are injuries, which satisfy the requirements for standing within the meaning of Article III jurisprudence.

Moreover, public policy considerations strongly encourage parties who are aggrieved by clearly unconstitutional laws to seek relief against the arm of the state entrusted with the power of prosecution, rather than to intentionally break the law and subject themselves to the risk of prosecution and criminal penalties. Standing clearly exists where the election law statute imposes severe criminal sanctions and abridges constitutionally protected expression, and where those parties challenging the statute are otherwise deterred from engaging in the prohibited conduct. This is, again, particularly true when those parties' First Amendment rights are at stake.

Finally, the instant action presents a case that is fit for a judicial decision because it presents a strictly legal issue, and failure to address the clear unconstitutionality of the Minnesota election law statute will cause significant hardship on Appellants. Accordingly, the District Court's decision that the case was not justiciable should be reversed, and the matter should be remanded to allow the case to proceed to an adjudication as to the constitutionality of the Minnesota statute at issue.

# ARGUMENT

## I.    STANDARD OF REVIEW.

This Court reviews a District Court's decision to dismiss a case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and issues of justiciability *de novo*. *Westcott v. Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990); *Hilton et al. v. Pine Bluff Pub. Sch. et al.*, 796 F.2d 230, 231 (8th Cir.), *reh'g denied* (Aug. 7, 1986) (internal citations omitted). In evaluating the propriety of District Court decision, this Court is guided by the standard that a motion to dismiss should not be granted "unless it appears beyond doubt that the Appellant[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784, 787 (8th Cir.), *cert. denied* 444 U.S. 899 (1979); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Consistent with the foregoing, this Court must accept as true all facts pled in the complaint and resolve in Appellants' favor all reasonable inferences arising from the facts pled therein. *Westcott*, 901 F.2d at 1488; *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). "The issue is not whether [Appellants] will ultimately prevail, but rather whether they are entitled to offer evidence in support of their claims." *Schuer v. Rhodes,* 416 U.S. 232, 236 (1974). Under this standard, a District Court's decision to dismiss a case can be affirmed "only in the unusual case in which an Appellant includes allegations that show on the face of the

complaint that there is some insuperable bar to relief." *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir. 1978), *cert. denied*, 439 U.S. 1070 (1979).

## II. THE DISTRICT COURT ERRED AS A MATTER OF LAW IN HOLDING THAT APPELLANTS LACKED STANDING AND THE CASE WAS NOT JUSTICIABLE.

Appellants presented the District Court with a concrete controversy that is appropriate for resolution through the judicial process.

The issue of whether the district court has jurisdiction to entertain a given suit is a threshold question in every case. *Warth v. Seldin,* 422 U.S. 490, 498 (1975). A federal court may declare the rights and legal relations of any interested party seeking such a declaration only in cases where an "actual controversy" exists, regardless of whether further relief is or could be sought. 28 U.S.C. § 2201. This statutory requirement for seeking declaratory relief "is equivalent to the constitutional limitation that federal courts may exercise jurisdiction only over actual 'cases or controversies.'" *United Food & Commercial Workers Int'l Union v. IBP, Inc.,* 857 F.2d 422, 426 (8th Cir. 1988) (citing U.S. Const. art. III, § 2, cl. 1; *Steffel v. Thompson,* 415 U.S. 452, 458 (1974); *Blatnik Co. v. Ketola,* 587 F.2d 379, 381 (8th Cir. 1978)). Federal court jurisdiction is further limited to those cases "which are traditionally thought to be capable of resolution through the judicial process." *Flast v. Cohen,* 392 U.S. 83, 97 (1968).

A "case or controversy" exists when the conflicting contentions of the parties present a real, substantial controversy between parties having adverse legal interests, i.e., a dispute that is definite and concrete rather than hypothetical or abstract. *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979). The difference between an abstract question and a "case or controversy" is necessarily one of degree and must be determined by the facts presented in each case. *Id.* at 297.

There is nothing "hypothetical" or "abstract" about the circumstances of the instant case. FECA expressly permits parties such as Appellants to actively support candidates for federal elective office. Minnesota law expressly prohibits such activities and imposes severe criminal penalties for violations of this law. (Add.16-18) Specifically, the Minnesota Legislature has mandated punishment for these acts by imposing prison sentences of up to five years, fines of $40,000, and dissolution of a corporation's political charter. (Add.16-18) (citing Minn. Stat. § 211B.15, subds. 6 & 7) Appellants have clearly alleged that they intend to engage in the electioneering activities that are explicitly allowed under federal law, but have been reluctant to do so because these activities have been criminalized by the Minnesota Legislature. (A.7-8, 11-12)

Thus, there is an actual controversy between Appellants—who wish to engage in activities to support candidates for the United States House of

Representatives and Senate—and Appellees—who are directed by the Legislature to prosecute parties like Appellants who engage in illegal activities within their respective counties. Minn. Stat. §§ 211B.16, subd. 3 and 388.01 (2004) (county attorneys' oath to uphold the law). Accordingly, an actual "case or controversy" exists within the meaning of 28 U.S.C. section 2201 and Article III jurisprudence in the instant case.

**A.     Appellants Have Standing To Assert Their Claims And Seek Declaratory And Injunctive Relief.**

A distinct aspect of the Article III "case or controversy" requirement is the justiciability doctrine of standing. To establish standing, a party must demonstrate they have suffered some actual or threatened injury, that there is a causal relation between that injury and the challenged conduct, and that there is a likelihood that a favorable decision by the Court will redress the alleged injury. *Minn. Citizens Concerned For Life et al. v. Fed. Election Comm'n,* 113 F.3d 129, 131 (8th Cir. 1997) (citing *Lujan v. Defenders of the Wildlife,* 504 U.S. 555, 560-61 (1992)). When suit is commenced by parties, such as Appellants, who may be a target or object of government action or inaction, "there is ordinarily little question that the action or inaction has caused him injury and that a judgment preventing or requiring the action will redress it." *Id.* (quoting *Lujan,* 504 U.S. at 561-62).

In their Complaint and before the District Court, Appellants repeatedly declared that they intend to engage in electioneering activities that, while expressly

allowed under FECA, are criminalized by Minnesota Statutes section 211B.15, subdivision 2. (A.10-13) Appellants have further confirmed that they have refrained from engaging in these electioneering activities, and that their First Amendment rights to engage in said activities as expressly provided for under FECA have been "chilled," because of the severe criminal sanctions provided for under Minnesota law. (Add.16-18) (citing Minn. Stat. § 211B.15, subds. 6 & 7)

This Court has held that this "chilling effect," *standing alone and without any threat of prosecution* is sufficient to confer standing on a party in a pre-enforcement challenge where the election law statute "both provides for criminal penalties and abridges First Amendment rights[.]" *Minn. Citizens Concerned For Life,* 113 F.3d at 131 (citing *N.H. Right To Life Political Action Comm. v. Gardner,* 99 F.3d 8, 13 (1st Cir. 1996)); *see also Ark. Right To Life State PAC v. Butler et al.,* 972 F. Supp. 1187, 1191 (W.D. Ark. 1997) (holding that Plaintiffs are not required to subject themselves to either fine, term of imprisonment, or penalties outlined in the state law in order to challenge constitutionality of election law statute in federal court); *Right To Life of Duchess County, Inc. v. Fed. Election Comm'n,* 6 F. Supp. 2d 248, 252 (S.D.N.Y. 1998) (same).

Without a doubt, the aforementioned requirements have been met in the instant case as Appellants' First Amendment rights to engage in these activities, as expressly provided for under FECA, have been and will continue to be abridged

until such time as the challenged Minnesota law and its severe criminal penalties have been struck down.

The facts that gave rise to the Eighth Circuit's decision in *Minnesota Citizens*, 113 F.3d 129 (8th Cir. 1997), are strikingly similar to the case at bar. In *Minnesota Citizens*, plaintiffs sued the Federal Election Commission ("FEC") in a pre-enforcement challenge wherein they alleged the FEC regulation at issue, which prohibited certain types of corporate expenditures, infringed on their First Amendment rights. *Id.* at 130. The FEC regulation at issue in *Minnesota Citizens*, much like the Minnesota statute at issue in this case, provided for criminal and civil penalties, and there had been no actual threat of enforcement by the FEC against plaintiffs. *Id.* at 131. The FEC argued in *Minnesota Citizens,* just as Appellees have argued in this case, that plaintiffs lacked standing to challenge the regulation at issue because they had suffered no injury and that plaintiffs could not show how the relief they sought would redress the purported injury. *Id.* The Court rejected the FEC's argument, holding that, "when a party brings a pre-enforcement challenge to a statute that both provides for criminal penalties and abridges First Amendment rights, 'a credible threat of present or future prosecution itself works an injury that is sufficient to confer standing.'" *Id.* (quoting *N.H. Right To Life PAC,* 99 F.3d at 13).

The Eighth Circuit's holding in *Minnesota Citizens* is clearly controlling in the instant case. Appellants should not have to decide between exercising their First Amendment rights, as expressly provided for under FECA, at the risk of having to pay significant fines, having their corporate charters dissolved, and having their officers and directors thrown in jail. *Id.*[1] Accordingly, it is clear that Appellants have already suffered the requisite "injury" and the District Court's decision that Appellants lacked standing should be reversed. (Add. 10-11)[2]

These same principles enunciated by the Eighth Circuit in *Minnesota Citizens* have been embraced by other courts. For example, the Seventh Circuit reached the exact same conclusion in a case involving the issue of standing within the context of a pre-enforcement challenge to an election law statute. In *Majors v. Abell,* 317 F.3d 719 (7th Cir. 2003), plaintiffs filed suit to challenge an Indiana election law statute alleging that their right to free speech had been abridged

---

[1] Indeed, "[t]he alleged danger of the statute is, in large measure, one of self-censorship; a harm that can be realized without an actual prosecution." *Vt. Right to Life Comm. v. Sorrell,* 221 F.3d 376, 382 (1st Cir. 1999) (internal quotations omitted).

[2] It is also clear that Appellants' injury would be properly redressed if the declaratory and injunctive relief sought by Appellants is granted. *Minnesota Citizens,* 113 F.3d at 131. ("the redressability requirement [is met] when [they] show that a favorable decision will relieve the discrete injury . . . .") As noted above, a decision in Appellants' favor will allow them to engage in the electioneering activities that are allowed under FECA, but prohibited under Minnesota law. Thus, this Court's well-established precedent, including the decision in *Minnesota Citizens,* clearly provides that Appellants have standing to challenge the statute at issue.

despite the fact that they had never faced any threat of prosecution.  *Id.* at 721.  In addressing defendants' argument that plaintiffs lacked standing to bring a pre-enforcement challenge, the Seventh Circuit held that:

> A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him, *the threat is latent in the existence of the statute.*  Not if it clearly fails to cover his conduct, of course.  But if it arguably covers it, and so may deter constitutionally protected expression because most people are frightened of violating criminal statutes especially when the gains are slight, as they would be for people seeking only to make a political point, and themselves not political operatives, *there is standing.*

*Id.* (internal quotations & citations omitted) (emphasis added). The Seventh Circuit remanded the matter back to the District Court to allow the case to proceed.  *Id.*

The Seventh Circuit's reasoning in *Majors* is directly applicable to the facts of this case.  Where an election law statute is on the books and infringes on a party's First Amendment rights, that party need not show that it has been threatened with actual prosecution in order for standing to be conferred.  *Id.*  The "latent" threat of prosecution presented by the existence of the statute itself is sufficient to establish standing.  *Id.*  The reason is simple: with the statute on the books, the threat of prosecution is omnipresent and punishment necessarily will follow if a party contravenes the statute's prohibitions.  This very same type of "latent" threat of prosecution exists in the instant case.  Minn. Stat. §§ 211B.15, subds. 2, 6, & 7 and 211B.16, subd. 3 (2004).

The Ninth Circuit has also analyzed a party's ability to commence a pre-enforcement challenge to a state election law statute on First Amendment grounds and come to the exact same conclusion. In *Arizona Right To Life Political Action Committee v. Bayless et al.,* 320 F.3d 1002 (9th Cir. 2003), the Ninth Circuit held that:

> Constitutional challenges based on the First Amendment present *unique standing considerations.* In an effort to avoid the chilling effect of sweeping restrictions, *the Supreme Court has endorsed what might be called a "hold your tongue and challenge now" approach* rather than requiring litigants to speak first and take their chances with the consequences. Were it otherwise, "free expression—of transcendent value to all society, and not merely to those exercising their rights— might be the loser." Thus, "when the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing."

*Id.* at 1006 (internal citations & parentheticals omitted) (emphasis added). The Ninth Circuit ultimately held that plaintiffs had standing to challenge the constitutionality of the statute where they faced the reasonable risk of prosecution pursuant to an existing statute on the books. *Id.* at 1006-07.

In the instant pre-enforcement challenge, the Minnesota election law statute clearly infringes on Appellants' First Amendment rights, which are expressly provided for under FECA. 11 C.F.R. §§ 114.3 and 114.7. Although Appellants have not been formally threatened with prosecution, the threat exists within, and as a result of, the existence of the statute. Appellees are charged by the Legislature with prosecuting entities such as Appellants who violate the challenged statutes.

Minn. Stat. §§ 211B.15, subds. 6 & 7 and 609.02, subds. 2-5, 609.02, subd. 5 (felony defined), 609.0341, subd. 2 (increased maximum fines for felony offenses), and 609.713, subd. 1 (punishment for crime of terroristic threats defined).

Appellants and their officers and directors should not be required to make the choice between refraining from the exercise of constitutionally protected speech, on the one hand, or risk being thrown in jail or having their corporations dissolved, on the other. Indeed, Appellants do not have to make such a choice. *Bland v. Fessler,* 88 F.3d 729, 733 (9th Cir. 1996) (holding that plaintiff had standing to pursue pre-enforcement challenge to civil utilities statutes that prohibited automatic dialing devices where said statute "places [plaintiff] between the rock of foregoing the use of his [automatic dialing devices] and the hard place of violating the law.")

Public policy considerations also weigh heavily in favor of recognizing that Appellants have standing to challenge the constitutionality of Minnesota Statutes section 211B.15, subdivision 2. Appellants have not violated the statute in the past because the Minnesota Legislature has deemed such activities as unlawful and mandated punishments of imprisonment, substantial fines, and the dissolution of corporate charters as sanctions for violations of this state law. Minn. Stat. § 211B.15, subds. 6 & 7. Indeed, these penalties have effectively deterred entities and individuals, like Appellants, from engaging in the conduct proscribed by

Minnesota law. *Id.* While prosecutors like Appellees may purport to have the luxury of picking and choosing the laws they may seek to enforce, Appellants and other citizens of Minnesota do not have the corresponding ability to flaunt state laws of their choosing without fear of prosecution.

Indeed, "it would turn the respect for the law on its head for [the Court] to conclude that [plaintiffs] lack standing to challenge the provision merely because [they] chose to comply with the statute and challenge the constitutionality, rather than to violate the law and await an enforcement action." *Bayless,* 320 F.3d at 1007. The filing of the instant pre-enforcement challenge prior to engaging in the conduct proscribed by Minnesota law demonstrates a "commendable respect for the rule of law, and should not preclude [Appellants] from challenging the statute." *Id.* (internal citations & quotations omitted); *see also Mobil Oil Corp. v. Att'y Gen. of the Commonwealth of Va.,* 940 F.2d 73, 76 (4th Cir. 1991) ("Public policy should encourage a person aggrieved by the laws he considers unconstitutional to seek a declaratory judgment against the arm of the state entrusted with the state's enforcement power, all the while complying with the challenged law, rather than to deliberately break the law and take his chances in the ensuing suit or prosecution.") Thus, any representations by Appellees to this Court that Appellees have not enforced, or have no present plans to enforce, the challenged statutes against

Appellants are irrelevant to whether the District Court has subject matter jurisdiction in this case.

In any event, Appellees' presently stated intentions[3] are not binding as to the future as changes in leadership may well result in changes in enforcement policy. *United Food,* 857 F.2d at 430 (citing *Phillips v. Pa. Higher Educ. Assistance Agency,* 657 F.2d 554, 569-70 (3d Cir. 1981), *cert. denied,* 455 U.S. 924 (1982)). Representations of past non-enforcement and promises to refrain from future enforcement are immaterial for the purpose of considering whether Appellants have standing to pursue these claims and, therefore, should be disregarded.

Appellants have clearly made the requisite showing that they have standing to challenge the preempted state statute which "chills" their right to engage in conduct clearly provided for under federal law and the First Amendment of the United States Constitution. Accordingly, Appellants respectfully request this Court to reverse the District Court and remand this matter back for further proceedings.

---

[3] In their motion to dismiss, Appellees argued that they have never enforced, and have no present plans to enforce, the challenged statute insofar as it relates to federal election activities. (Add.8) The District Court held that, given the fact that Appellees moved to dismiss on the basis of the pleadings alone, the court would not consider the affidavits and convert the motion into one for summary judgment. *Id.* Accordingly, this issue should not be considered by this Court in the event that Appellees attempt to argue as much on appeal.

**B.  Appellants' Claims Are Clearly Ripe For Adjudication.**

Part and parcel of any justiciability determination regarding a pre-enforcement challenge is whether a case is ripe for adjudication. *Minnesota Citizens,* 113 F.3d at 131.  A pre-enforcement challenge is ripe if the case is "fit for prompt judicial decision" and the "failure to review would cause significant hardship to the parties." *Id.* at 132.  A case is fit for judicial decision where the case presents legal issues, rather than factual issues. *Id.* "Sufficient hardship is usually found if the regulation imposes costly, self-executing compliance burdens *or if it chills protected First Amendment activity.*" *Id.* (emphasis added)  Clearly, these factors are met in the instant case.

Appellants' Complaint for declaratory and injunctive relief clearly presents the strictly legal issue of whether FECA and its companion regulations expressly preempt Minnesota Statutes section 211B.15, subdivision 2 insofar as it relates to federal election activities.  (A.14-16)

A decision by this Court confirming that FECA preempts Minnesota Statutes section 211B.15, subdivision 2, insofar as it relates to federal election activities will allow Appellants to engage in the electioneering activities allowed under FECA without fear of punishment and prosecution by Appellees County Attorneys. *Id.* at 132.

Similarly, it is undisputed that this hardship prong is satisfied because the challenged Minnesota statute "chills" protected First Amendment activity, and Appellants have had to forego engaging in those electioneering activities that are expressly provided for under FECA. *Id.*

In short, there is no danger that the District Court will entangle itself in an abstract disagreement. *Nat'l Right To Life P.A.C. v. Connor,* 323 F.3d 684, 692 (8th Cir. 2003). As a result, this Court should find that this matter is ripe for judicial resolution, and the matter should be remanded to the District Court.

### C. The Case Law Relied Upon By The District Court Is Clearly Distinguishable From The Case At Bar.

Each of the cases relied upon by the District Court to justify dismissal of Appellants' Complaint is patently distinguishable.

The District Court relied on *Poe v. Ullman*, 367 U.S. 497 (1961), for the proposition that the mere existence of a penal statute is insufficient to establish a case or controversy if there is no threat of enforcement. (Add.10) In *Poe,* a fractured Supreme Court decided the issue of standing in the context of a 1961 case involving a couple's challenge to a Connecticut statute prohibiting the use of contraceptives. 367 U.S. at 507-508. The case did not involve either infringement on a party's First Amendment rights or the harsh criminal penalties faced by the Appellants in the instant matter if they engaged in the prohibited conduct.

The District Court's reliance on *Renne v. Geary*, 501 U.S. 312 (1991), is similarly misplaced. (Add.10-11) The District Court relied upon *Renne* for the proposition that Appellants have failed to allege sufficient facts of their proposed political activities and that the instant case was too abstract. *Id.*[4] In *Renne,* plaintiffs were an amalgam of voters, political party central committees, and political committee members who commenced a pre-enforcement challenge to California's constitutional provision prohibiting political parties from endorsing candidates for nonpartisan office. *Id.* at 312. In *Renne*, however, if plaintiffs chose to engage in the "prohibited" electioneering activities, the violations could *not* result in any type of *criminal prosecution.* *Id.* at 321 (emphasis added). Rather, the violations of the challenged law could only be enforced by way of a civil injunction. *Id.* Based on those facts, and specifically the fact that there was *no possibility of criminal prosecution,* a divided Supreme Court determined that there was no case or controversy within the meaning of Article III of the United States Constitution. *Id.* at 322.

---

[4] The District Court's statement that Appellants have failed to allege sufficient facts of their proposed political activities is curious given the detailed allegations of Appellants' proposed political activities in their Complaint, as well as the appropriate standard by which the court is required to review the allegations pled therein. (A.11-12); *see also* Section I, *supra.* Any greater detail with respect to, for example, which candidates Appellants might support would be extraordinarily difficult in light of the fact that the next election for the United States Senate and House of Representatives is not until November 7, 2006.

Appellants are not as fortunate as plaintiffs in *Renne*. If Appellants engage in the conduct prohibited by Minnesota law, they would not be subject to a mere injunction; instead, they and their officers, directors and employees risk five years in jail, corporate dissolution, and significant monetary fines. Minn. Stat. §§ 211B.15, subds. 6 & 7. Indeed, they must risk these severe sanctions simply to exercise their First Amendment rights, which are expressly recognized and permitted under federal law, but constitute crimes under Minnesota law. Under applicable precedent, Appellants are not required to make this choice. Instead, the existence of the challenged statute, which imposes costly, self-executing compliance burdens, and chills protected First Amendment activity, clearly presents a case that is fit for judicial determination. *Minnesota Citizens,* 113 F.3d at 132.

## <u>CONCLUSION</u>

Based upon the foregoing, Appellants respectfully request that this Court hold that Appellants' claims are justiciable and remand this matter back to the District Court for further proceedings.

Dated:  May 13, 2005

WINTHROP & WEINSTINE, P.A.

By:_____
    Thomas H. Boyd (#200517)
    David M. Aafedt (#27561X)

225 South Sixth Street
Suite 3500
Minneapolis, Minnesota 55402
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
tboyd@winthrop.com
daafedt@winthrop.com

**Attorneys for Appellants Saint Paul Area Chamber of Commerce, Burnsville Chamber of Commerce, and Greater Mankato Chamber of Commerce**

2291186v1

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C), the undersigned hereby certify, as counsel for Appellants Saint Paul Area Chamber of Commerce, Burnsville Chamber of Commerce, and Greater Mankato Chamber of Commerce, that this brief was prepared in Microsoft Word 2000, using 14-point Times New Roman proportionally-spaced font, and further certify this brief complies with the type-volume limitation as there are 6,070 number of words in this brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), according to Microsoft Word 2000's word count. A 3-1/2 inch computer diskette filed with this brief has been scanned for viruses and is virus-free.

Dated: May 13, 2005                    WINTHROP & WEINSTINE, P.A.


                                       By:_____
                                          Thomas H. Boyd (#200517)
                                          David M. Aafedt (#27561X)

                                       225 South Sixth Street
                                       Suite 3500
                                       Minneapolis, Minnesota 55402
                                       Telephone: (612) 604-6400
                                       Facsimile: (612) 604-6800
                                       tboyd@winthrop.com
                                       daafedt@winthrop.com


                                       **Attorneys for Appellants Saint Paul Area Chamber of Commerce, Burnsville Chamber of Commerce, and Greater Mankato Chamber of Commerce**

# ADDENDUM INDEX

12/06/2004 Report & Recommendation
of Chief Magistrate Judge Jonathan Lebedoff ....................................... ADD.01-12

02/23/05 Order of District Court Judge Michael J. Davis
(adopting Report & Recommendation of Chief Magistrate Judge
Jonathan Lebedoff dated 12/06/2004) .................................................... ADD.13-14

Minnesota Statutes section 211B.01 .......................................................... ADD.15

Minnesota Statutes section 211B.15 ...................................................... ADD.16-18

11 CFR § 114.3 .................................................................................... ADD.19-21

11 CFR § 114.7 .................................................................................... ADD.22-23

2 U.S.C. § 453 ......................................................................................... ADD.24

11 CFR § 108.7 ........................................................................................ ADD.25